Case No. 20-5427 Maryville Baptist Church, Inc. et al. v. Andy Beshear Case No. 20-5465 Theodore Roberts et al. v. Robert Neace et al. Argument not to exceed 25 minutes per side. Mr. Weiss, you may proceed for the appellants. Good morning, Your Honors. My name is Chris Weiss. I represent the parishioners and the appellants in the Roberts case. This case is not about science. It's about the First Amendment, and the two are not in conflict, even though the governor wants you to think that they are. The facts are fundamentally not in dispute. This case began when our three clients, on the holiest day of the year on the Christian calendar, attended Easter Sunday service and were met with a state police response, which was directed by the governor. State police officers placed notices on the windshield of our clients' vehicles and took down their license plates. Mr. Weiss, Mr. Weiss, our opinions show quite a bit of familiarity with the background. We've had a couple occasions to look at these facts. Maybe you can help us deal with this mootness question. You know, I get the point that Judge Bertelsman ruled against you. You, of course, got the state pending appeal, which was a published decision very focused on the legal issues. The state not only changed its policy, but didn't appeal Judge Hale's ruling. I mean, Judge Hale eventually ruled against the state as well. They didn't appeal that. So definitely the case has one wondering whether we're being asked to issue an advisory opinion, which seems particularly odd since we already have an opinion, which, you know, I would have thought your clients were comfortable with. Your Honor, my clients are comfortable with the injunction that this court entered. I would point out that this case is not moot for four reasons. First, these defendants in the Maryville case dealing with Judge Hale filed a motion June 29, 2020, and that's at page ID 659 to 668 in that case, where they asked the district court to dissolve the injunction and argued that there were allegedly outbreaks in churches that they needed the leeway to reenact the ban. And the governor has been publicly out, as of even a few months ago, asking Kentuckians not to attend church. So there is, in this record and elsewhere, an apparent intention to reimpose the ban absent the injunction. Second, these plaintiffs did violate the injunction or the mass gathering order. They attended the church. They got the notice. Counsel, on the mootness inquiry, we don't look at mootness for all time. Isn't it time to look at the mootness inquiry at the time the policies changed and at that time they did not appeal Judge Hale's ruling? Your Honor, they did not appeal Judge Hale's ruling. I would submit to the court that the voluntary cessation doctrine also applies very clearly in this case. There is nothing that keeps the governor from reenacting, particularly absent an injunction, the ban. And he has the burden to prove that. And again, we're dealing not with a legislative change but with an executive action, putting this case under the Trinity Lutheran Church of Columbia, Inc. v. Comer case that the Supreme Court decided late in 2017. So Trinity Lutheran, the thing that is going on in that case, as the footnote points out, is you had a Missouri Supreme Court decision construing their Blaine Amendment, which required discrimination against faith-based entities. So you had a state constitutional provision requiring discrimination whenever the state did anything, not just bad policy, anything. So clearly, that's quite a bit different from this situation. But here's the real thing that I've not seen any party grapple with that I find most complicated about this mootness inquiry. If you look at the mootness cases, when they talk about clear cessation, clearly not going to happen again, what they're referring to is the same legal issue. So the easiest way to think about it is the statute that says faith-based people can't do this. And the statute is taken off the books, but there's a possibility it'll be put back on. But the key is it's a very clear rule. Faith-based people can't buy groceries, whatever. So it's something really clear. What's really tricky about this case is they're two seriously shifting items. Even if the state did something mandatory in the future, I think it would be utterly bizarre if it was exactly the same order that was litigated in front of Judge Hale and Judge Berlesman. I mean, the state's already changed the policy four times in different directions. If you look around the country, there's so many different permutations of restrictions on faith-based gatherings, and that's only variable one. Variable two is this whole inquiry is about the comparator and whether there's discrimination against faith-based entities. And we know that that is also a moving target. Why? Because it shifts every time the state does something. And if you look to the other states, same thing. So whether it's concerts, working, essential services, non-essential services, there's literally a thousand variables. So I find it utterly unlikely. In fact, I would consider it freakish if we somehow got ourselves back to the exact same order in the sense of what Kentucky was prohibiting faith-based groups to do. And the comparators were exactly the same as at the time of the Hale and Berlesman order. So that's where I'm just, I can't see it. So you got to help me with that. Your Honor, I think, I think we could look and I realized perhaps in the ordinary case, that would be right. But there are indications the governor does, in fact, want to put on this very ban again. And what are those indications? The June 29, 2020 motion he filed to lift the Hale injunction. But why would he do that if he could go and do a different permutation and not be subject to that injunction? Again, that injunction enjoying the same order. Did he say in those papers he was going to issue the exact same order that Judge Hale had issued before? Your Honor, that was joining the injunction ban. And what he asked was, quote, the leeway to reenact the ban. So I, you know, I think, again, we're not dealing with a voluntary cessation here. We're dealing with, you know, a vows placed in the record. It's a page ID in the Maryville case, 659 to 668. A vows where the governor is indicating an intention to at least have the leeway to reenact the same ban. So I think In your honest assessment, you think if there's a new ban, it will be exactly the same, both in terms of what it restricts place of worship in doing and exactly what the other groups are doing or not doing? That's your honest assessment? Your Honor, it is hard to predict the future with any degree of absolute certainty, but certainly Your Honor, I think the anxiety, again, is the, and by the way, if we do not prevail here, there is no, there would be, I suppose, no injunction that's been entered that prevents the governor from reenacting it. And I think the governor, you know, has repeatedly filed pleadings that indicates his view of the law, particularly with some injunctions pending an appeal decisions from the Supreme Court, that he is not bound by those published decisions. And I think when you look at the entire picture, including his pleading in the Maryville case to try and withdraw the injunction, there is a real threat of reimposing this same ban. Is it exactly, may it be exactly the same? Yeah, maybe, but maybe not. But certainly I think that pleading is an indication of what he's thinking and what he's intending. And I don't think we can, you know, when somebody tells you who they are, I think you have to take their word at it. And the governor Mr. Weiss, I don't want to prolong this, you're way over your time. So I don't want to prolong this much longer, but let me, let me focus it on, on just a slightly different way. In your brief, you, you want us to reverse the judgment of the district court denying the preliminary injunction. I mean, haven't we either in this case or the other case effectively already done that? Haven't you already gotten the relief you're asking for in the brief? We have not, Your Honor. That, the district court's denial of the injunction is still a matter of record. There's an injunction pending appeal, which is interlocutory in its nature. When this appeal is over, that injunction goes away. There's been no instructions to the district court to enter the injunction. So I think the simple answer to that is no, Your Honor. We're not there with this current procedural posture. And Your Honors, I am out of time. Remind me, it just occurred to me, forgive me for forgetting this. Did Judge, what did Judge Bertelsman do on the, did he say there was a travel problem? Wrex travel problem? He did, Your Honor, and he entered an injunction, a preliminary injunction against that, which the governor has also attempted to vacate, which he, which Judge Bertelsman denied. That aspect of his injunction remains in place on the travel, but he denied it as to the church case. So just, just tell, I'm sure all three of us would like to know the consequences of that. Does that cover everything or not? It only covers the right to travel, Your Honors. Oh, I see. So it has to be someone outside the area. It's somebody crossing, there's somebody in Kentucky going outside the state or somewhere. I get it. So, yeah, so it doesn't overlap entirely. I see. I see. Okay. Do you know of a case in either direction where the types of orders that were being challenged were so fluid and the test for unconstitutionality had this comparator and the other side of the comparator was very fluid as well? That's just what's so bizarre to me. Your Honor, there are always fact-based, facts and circumstances-based scenarios. I'm not sure that there's anything that's exactly on point, but I would submit that the voluntary cessation doctrine certainly applies in this case. The governor has a very, very heightened burden. He has not remotely met it, particularly with his pleadings that he's filed in Maryville below to try and vacate the injunction. Okay. Thank you. We'll hear from whomever's next. May it please the court, on behalf of Maryville Baptist Church, we respectfully request that this court enter the preliminary injunction. First, this case is not moved. Because the problem that was at issue at the beginning is the same problem now, internal discrimination. And that's still part of these continuing orders. That's never changed. Maryville Baptist Church can have unlimited numbers with very little restrictions on any social service, unemployment counseling, feeding, sheltering. Help me out. I don't know what you're saying. Are you complaining about the current order or are you complaining about the prior order? I'm complaining about the order that begins in March of the 19th to the present. None of that essential discrimination internally, which this court recognized in Maryville, has changed. It's still there. And that is the church can engage in non-religious activities in the same building, social services, unemployment counseling, feeding and sheltering, but restrictions kick in when it transitions to a religious worship service. That has never changed. And that's still part of it from March 19th to the present. Are you essentially saying then, Mr. Stiver, that while part of the March 19th order might have been changed in a way that favors you, there's still vestiges of that that weren't resolved by the May 9th order? No, no, they're not. In fact, they continue to issue these continual directives. In fact, this court issued... Mr. Stiver, I'd want to be... I'm just not understanding exactly what you're saying. Today, I'm right that it is a different threshold of restriction for a faith-based service. What is it, like 33% of occupancy, something like that? 33% of occupancy, but no restriction on the internal non-religious activities. That has never changed since March 19th, and it's not changed now. The other thing, Your Honor, is after this court issued the March 9 order on Roberts and said that they should be treated like life-sustaining entities... ...with the free exercise clause, there's no problem with mootness. All that happens is we say the old dispute's moot. Refile your claim, and if that's what you want us to decide, we'll decide it. Well, Your Honor, in addition to that, the reason why it's not moot is 11 days after this court issued the May 9 order, on May 20, the effective date was the requirements, not guidance, requirements for places of worship. And it says, in addition to the life-sustaining activities, which this court addressed on May 9, places of worship will be expected to meet the requirements below in order to reopen and remain open. And that's where it has the 33%. So 11 days after, they continue to go back to the same well and continue to treat churches in a discriminatory manner compared to the non-religious activities, both internal inside the church itself and external with comparative to other external non-religious commercial retail liquor store type of activity. That has never changed. So the essential issue is still there. And for the fact that they only... Mr. Staver, I'm not going to tell you how to strategize your cases. You're the expert here. But if I'm grasping your argument, you want us to decide the validity of the order that Judge Hale already granted you relief on, on the ground that the state has not given up the possibility of some differential treatment with faith-based entities. If we deal with that abstract question the way you have presented it, the only way you win is if it's illegal even to have a 99% threshold. All right, that's the way we would have to think about that case. If you think that is a helpful way to think about this issue, that's your call. But I must say it escapes me. It seems far better for you to let the mootness fall off and then litigate the 33%, which is a lot easier than the possibility of 99%. But that is the way we would have to treat the argument you have just made. Any differential treatment at all violates free exercise, even in the middle of a pandemic. So go for it. Yeah, Your Honor, the problem with going back and litigating every single change is that would require every two weeks or every 30 days. And the Alene 7th Circuit found in that case that these continuing orders that come out every two weeks, every 30 days, in fact, the life expectancy of any order is probably old at 30 days. There's no way that we can actually litigate this. And we'd be constantly in the hamster's cage of litigating and litigating and litigating. And every time we got an order, they would tweak it a little bit. We'd have to go back again. It is the governor's burden to prove that he will not, not that he's unlikely, but that he has disclaimed his past and he will not go back to discriminating against religious versus non-religious gatherings, which is at the core essence of this case and the core essence of this court's rulings. It has different permutations at different times, but the essence is the same. Discrimination under Lakoumi of religious... Every move that has been made follows one consistent pattern, placing fewer restrictions on faith-based groups. First it was outdoor, then it was just indoor. Then it was 33%. And then most recently when there was a spike, it was an admonition in a voluntary way. So each action has been in the direction not of games playing to go out, get around things to get after you. It's been lightening the regulations. It just seems like a very funny fact pattern to accuse him of, quote, bad faith. Well, Your Honor, I think it's bad faith. 11 days after this court issues an order, IPA, saying specifically that churches need to be treated like in terms of the social distancing, et cetera, as life-sustaining entities. And they go back and they don't treat them. They say, yes, life-sustaining, but here's additional requirements. They disobeyed this court's clear directive. And they've been doing that from the very beginning. This is the same governor who sent out law enforcement on Easter. Why didn't you file a lawsuit several months ago challenging those new orders if they were an end run or gamesmanship? That's what I don't understand. Your Honor, the capable of repetition yet evading review is a classic example of what we have in this case. Some courts have said four years is not enough time. Clearly, the Supreme Court has indicated 18 months. We've listed those cases in our briefs. We would continually never get relief because every time we filed suit, they would tweak it, maybe move from 33 to 35%, or they might tweak it here and there. But what they won't do is eliminate the disparaging treatment between churches. They say on page 11 of the answer brief, it is unlikely. But Everson at page 15 doesn't allow an unlikely decision. It says the state cannot prevent an individual from attending church against their will under the establishment clause. That's not unlikely. It's not hesitating. It's quite clear. And yet that's what they've been doing. Either totally banning it at the beginning or placing additional restrictions on religious activity compared to religious activity. And that continues until this very day. It is the reason why they want the lower court injunction to dismiss the injunction pending appeal. Because they want to go back. They've actually stated in their answer brief that the pandemic is fluctuating and they want to go back to additional restrictions. Mr. Saver, let me ask you the same question that I asked your fellow counsel. Your brief says you want the district court to be reversed and the PI should issue. Didn't you win before Hale eventually? Here's what we did, Your Honor. This court in Maryville issued an order after the May 2 decision and asked the court to address the IPA. The PI was already before this court and therefore the PI had divested the court of jurisdiction on that issue. The court addressed the IPA but then went further where it did not have jurisdiction to address the preliminary injunction. So we do have a preliminary injunction there, but that was without jurisdiction. The preliminary injunction that he issued with or without jurisdiction is in your favor, is it not? Yes, it is. So there's two options, Your Honor. Either this court issue the preliminary injunction consistent with these courts' two opinions for the IPA or the court direct or accept the PI listed below so that the PI remains in place because there is a fully briefed motion to dismiss by the governor pending before the district court asking to dismiss that PI. Ms. Schaber, can I just, help me out with this point. I think it relates to what Judge McKee is asking. If we, quote, affirm the PI in Marysville, Judge Hale's decision, even though the state's not appealing it, so that's bizarre, but let's just do what you want, and you both seem to think that's so important because, oh my gosh, the governor is asking to dissolve it. The governor can ask to dissolve it whether we affirm or not. It's always true. I mean, I just don't know why that changes the mootness inquiry. Because by this court either not granting the PI or not acknowledging the PI below and adopting it or affirming it, that gives the lower court and the governor a green light to do what they want to do. There's no question that the case would be— They always have a green light to ask for the dissolution of a preliminary injunction. They do have a green light to ask for that, but this would be a—that's when facts and circumstances change. But if this court gives them the go-ahead, there's no question we'll be right back here again with the same kind of issue. Mr. Schaber, do you really think this panel, after the two decisions this issue, is going to say, we're back at square one, do what you feel like doing? That's really how you see the situation? Not that this panel would do that, but I believe that that's what would ultimately happen. The PI gets dissolved. The governor then goes back to these mandatory requirements and then begins to impose criminal penalties. If you don't have all of these requirements, as quickly as they issue these requirements or guidances or change the orders every two weeks, every four weeks, which we already know, he wants to impose stricter requirements. He just did on certain restaurants and bars. Mr. Schaber, the PI has not been dissolved. So you want us to issue a ruling in anticipation that something might be dissolved, that if it was, you could appeal? The governor is arguing that this court's orders are unconstitutional. The governor has argued that the PI below is unconstitutional, citing South Bay. South Bay doesn't give any precedent at all. Little Sisters of the Poor case in 2014 indicated that even granting an IPA… Mr. Schaber, the governor's arguments don't trump what either the District Court or the Court of Appeals orders say. So I'm just trying to figure out, who cares what the governor is arguing in terms of what the ultimate impact on the road might be? What difference does it make? What difference does it make is that, one, we have a discrimination that's never been remedied. We still have internal discrimination that's never changed since March 19th to the very present. Mr. Schaber, you're going back to old stuff. I'm still trying to sort this out. You have to acknowledge it's a little strange for the winner to be appealing. I hope we can recognize there's something odd about your case that effectively the winner is appealing. And I'm just trying to sort through what are real concerns of yours and what are not. If we say the, quote, appeal is moot because it's the losers that appeal, not the winners, the state chose not to appeal, the appeal is moot, that doesn't make the preliminary injunction moot. Okay, let's just say that's what we do in your case. Tell me what risks there are to you, given that if the governor comes in and convinces the District Court to dissolve the injunction, couldn't you appeal that ruling? Yes, we could. Okay, so please, please try to think about it from our perspective, just for a nanosecond. Why is that not a legitimate approach? Because we'll never get the ultimate release that we request. Because we'll be back in an endless loop, appealing, filing, appealing, filing, appealing and filing. Mr. Schaber, Mr. Schaber, so far in this case, the only side of the case that appeals decisions that shouldn't be appealed is you. Well, the fact of the matter is, one, I mean, we're fine with this court adopting a P.I., I believe. But the fact of the matter is that when it entered the P.I., it didn't have jurisdiction because the P.I. was here. It had P.I. what this court asked it to do. You're trying to undo your victory. No, we want to sustain our victory, but we don't want it to ultimately be just simply moved to the side and we go back and the P.I. is completely dissolved. And now we still have the discriminatory issue that's never been remedied. And we're back up here again and then again. So one of two things, either the court grant the P.I., which is our request, or alternatively, just adopt or acknowledge the lower court's preliminary injunction that we got the release that we had requested. Even though, because there's a technical issue there, and that is, did the lower court have jurisdiction to grant a preliminary injunction when that was on appeal, rather than an I.C.A.? Mr. Staver, is the governor contesting the jurisdiction of the district court to have granted the order that favored you? No, but they're contesting. You're contesting the jurisdiction of something that the governor accepts. I mean, if he contests the jurisdiction, I get that. But I'm just dumbfounded that you want us to undo something where you prevailed, vacate it, and then reinstate it so it comes from us rather than from the district court when nobody other than you is arguing about it. Well, what the governor is arguing is that the entry of the orders by this court and by the lower court have been overruled by South Bay. That has an intervening legal decision. And so he is wanting to literally void those based upon law, not change circumstance or facts. And consequently, you know, this court, whenever a court issues a P.I., even if it's not within the jurisdiction of the court, either this court could injure a separate P.I. or this court could just simply affirm the P.I. or acknowledge that the P.I. already exists and we already have our full relief below. Either way, rather than just simply dissolving the P.I. or giving language that would give way to dissolve that P.I., we're right back here in the same place. Mr. Judge Montbandian, I know you were trying to ask a question earlier. Make sure you had a shot at Mr. Saver if you want. No, I'm okay. Okay. Mr. Saver, thank you very much for answering our questions. Let's hear from the next party, next lawyer. Thank you, Your Honors. May it please the court. My name is Taylor Payne, Deputy General Counsel to the governor, and I represent Governor Andy Beshear and Secretary Eric Friedlander in this matter. The court's questions were directly on point of asking why we're here. This case is moot. The court recognized its mootness in its May 2, 2020, per curiam order when it held that the case would become moot upon Governor Beshear's amendment to the mass gatherings order. So, Mr. Payne, what's your answer to the point that – well, I mean, there's two things that the other side has going for it. It has to be pretty clear that it's moot. I mean, I think you would acknowledge that. That's not worth fighting. And then they point out you're trying to dissolve the P.I. in the Marysville case, and that – why would you do that if you didn't want to reinstate the order? So how do we deal with that? Well, Your Honor, I think that the governor's position on dissolving those P.I.s is that we do believe we got guidance from the Supreme Court, and we certainly got persuasive opinions that we think the district court should consider in dissolving the P.I. in the Marysville case. Okay, so let's just stop you there. I think that runs right into the point Mr. Stavers is making. If you think the law has shifted, why don't you want us to decide that question rather than the district court, unless you're engaged in quorum shopping? No, Your Honor. We think this court – we think the issues are moot, and we think these issues could come back up to the court on either different issues under different circumstances, perhaps these new orders that Mr. Stavers suggested that place suggestions and requirements upon places of worship as they do other businesses and services. But principally here, they've gotten the release they seek. What the governor is attempting to do is have the district court reevaluate that and then potentially come back up to this court with their opinion addressing those cases and potentially other cases that are rapidly developing during this COVID emergency. So you actually seem to think there's a case or controversy, mainly what the law means when it comes to free exercise and how much latitude your client has when it comes to new restrictions on churches. Well, we think there's been an issue presented now with the Supreme Court opinions, Your Honor, but we don't believe that that creates a case or controversy regarding the March 19th order that we entered and that has been – Just an issue. Just an issue. Just an issue. That's correct, Your Honor. That's very lawyerly, I'm afraid to say. I apologize for that. But what we think this does, Your Honor, is that if this court were to address it at this point, we believe it would be advisory and in violation of Article 3. These intervening events and that's – Let me ask you a question, though. Under speech first, one of the questions that we ask for mootness is whether you are vigorously defending the merits as opposed to just saying if it's not moot, then we lose. It seems to me you're vigorously defending the merits because you're saying that our previous opinions are not good law anymore. And combined with the other two factors, the governor, it's not a legislature, it's the governor, and also the timing, I suppose, is a little suspect as the litigation was already ongoing. I don't understand why we would be moot then under that case. Well, I do want to clarify a few things regarding the timing, Your Honor. Governor Beshear announced this on April 30th prior to any of these losses before the Sixth Circuit where he was ruled against or before he was enjoined at all. And I do want to – But the litigation had been filed, right? I mean, we've got case law that suggests that when you act in the face of litigation, even if you haven't lost anything yet, that that puts the timing a little bit suspect. I agree that he announced in late April that essentially I think what you're going to say is there was going to be a sunset on May 20th, right? There was going to be something down the road. He was treating religion with retail, and therefore it looks more generally applicable, not like a response just to a religion lawsuit, right? But the timing is a little bit suspect, right? I mean, let's say it weighs slightly in your favor. Still, it's the governor and not the legislature. He can change it at any time. And also, what about this vigorous defense? I mean, you're not giving up the defense that the injunction's improper, right? In fact, you're arguing just the opposite. That's true. We are defending the governor's actions in this case, Your Honor. But again, just back to the timing very briefly, I do want to – and I don't know if this is clarified in the record, and part of that is the nature, the interlocutory nature that were before this court. But it's apparent from the governor's press conferences that he was announcing these reopening efforts and collaborations with other bordering governors, particularly Ohio and Indiana, to begin a concerted effort to reopen services and cultural activities within the state. Those efforts were ongoing prior to April 30th. I don't think anything specific was announced until that April 30th date, other than that collaborations were going. We had announced the phases that we were going to be – that things were going to be done in phases and have gradual reopenings. But these plans were in the works, and this idea of how to reopen our economy once we survive that sort of initial surge of COVID-19 were contemplated prior to this litigation and prior to any potential negative opinions towards the governor's actions. But we are defending the actions, Your Honor, and we're defending those precisely because we think it's important to secure a governor's ability to act and define what he is doing in these emergencies. But this appeal still remains moot. Again, Judge Hale granted the preliminary injunction below, so we think it's appropriate to go back and get a ruling on the merits from Judge Hale and ultimately Judge Bertelsman, and then these plaintiffs' appellants can – or the governor can appeal that to this court when they see fit and when the record has been fully developed. Mr. Payne, let me ask you what still confuses me, then, based on what you just said. I'm looking at the brief that you filed as the appellee in the Maryville Baptist Church case, and it says, for the reasons here and stated, this court should affirm the district court's denial of plaintiff's motion for a temporary restraining order. I mean, that ship sailed a long time ago, so what relief are you asking for? We're asking for this court to dismiss the appeal and ultimately order the district court to dismiss these claims because we do believe that Governor Beshear's reopening of worship services – and I do want to clarify because I think Judge Sutton mentioned this earlier – the guidelines that are currently in place suggest that churches should limit capacity to 50%. That went into effect on June 10th, so there was a month at 33%, and now the guidelines – again, they're not requirements that they have to meet this, but the guidelines are that they should be open at 50% since June 10th. Let me interrupt you again because I still don't get it. If you were to say that you want us to dismiss this appeal because either the order's been replaced or the appellant's won, which is what we were talking about earlier, I would get that. But you seem to be going on and say the whole case is moot and that we should – are you asking us to tell the district judge to dismiss the case or not? Yes, we do believe the underlying claims are now moot based on Governor Beshear's actions. Is that the relief you're asking us to grant you? Yes, Your Honor. Now, just on that point, can you say on the record as an officer of the court on behalf of the governor that there is zero chance the original order, the one at issue in both cases, will be reinstated? Your Honor, I'm hesitant to say that there would be 0% chance. I believe in our briefs we stated that it would be very unlikely. Can I just ask you why? See, I thought it would be zero. Here's why. It's not so much that there won't be spikes or that you won't need authority, like I get that point. The reason I thought it was zero is I couldn't imagine a world in which the exact same restrictions were imposed on churches, like are we talking indoor or outdoor, for example, and number two, that the comparators were going to be exactly the same. That would strike me as utterly bizarre, you know, crossing international date lines and the like, given all that everyone has learned since and all the moving parts. So that's why I thought the chances would be zero that the exact same order would be issued. Yes, Your Honor, and let me clarify because you do bring up a good point. I do believe there would be 0% chance the exact same order would be entered, and certainly a 0% chance the exact same order would be entered under the circumstances in which they were on March 19. How about zero chance that there will be any criminal prosecution supported by the governor of the people that had the stuff put on their windshields at the outdoor service at Marysville? Yes, Your Honor, there was, I mean, no one was prosecuted under that. No, but there's a two-year limitations period, so that's why. That's true, Your Honor. Yes, I think I can clarify that there would be 0% chance that anyone would be prosecuted, and the governor has said that, and as far as we have another case. But wait a minute, Mr. Payne, you don't control what the county prosecutors do. They don't act and beholden to the governor, do they, in Kentucky? No, they don't, Your Honor. I think we're playing word games here, because can you give us the commitment on behalf of the governor that you won't reimpose an order that's actually more restrictive on churches if the governor determines in the exercise of his judgment that the status of COVID at some point justifies even more restrictions than were present in connection with the March 19th order? Can you say that? Your Honor, I can say confidently that there would not be an order that would be more restrictive, and that's certainly up to this court's interpretation of that order in each of its procuring opinions addressing the injunction pending appeal. And I know there was some disagreement. I think we pushed back early on, and it was never our intention that the mass gatherings order applied to outdoor drive-in services. And once receiving that order, I certainly understand this court wanting to make that clarification. But, you know, again, I think a lot of these orders are sometimes imperfectly drawn in the imminency of these emergencies. So, Mr. Payne, I want to go – first of all, thank you for answering our questions, which is always helpful. If we could focus on Marysville for a second, I'm just trying to think of what seem to me two different paths to mootness, your mootness argument. One is the path that – listen, it's not that the case is moot, but the appeal is moot because, you know, plaintiffs won with the preliminary injunction. You don't appeal victories. The judgment was for them. Your time to appeal has come and gone. So that leaves the preliminary injunction in place, and that leaves one remedy and one remedy alone, and that's if the state decides to ask it to be dissolved, they can ask it to be dissolved. It would be a must-panel case. Whatever Judge Hale did, it could be appealed to us. So that's path one for resolving that. Path two is, I think, the broader argument you made, which is we should be dissolving it and sending it back to the district courts to dismiss the whole case because it's now moot given the orders and given your assurances. Do you have a preference as between those paths on the Marysville case? Yes, Your Honor, we would prefer the second path that would require the district court to dismiss the claims for lack of jurisdiction. Again, I'd be much more comfortable with that if I wasn't dealing with an advocate who thinks the law has changed and who thinks a cert opinion by one justice on the U.S. Supreme Court thinks that alters the legal landscape, which is very much in your brief. Well, Your Honor, I think our position is that we've now received what we think is persuasive guidance from the Supreme Court. On three occasions now, they have denied applications for an injunction. The most relevant thing was they didn't touch your cases. That's true, Your Honor. We have not taken those cases up yet, and I'm not sure if we would. But, I mean, those are strategic decisions we would eventually make, and I think we would prefer to do that with a full merits decision going forward. And that's certainly in the context of how we view this COVID-19 emergency, where we're attempting to reopen, and we're learning more about COVID every day and how best to allow people to resume normal activities while still eliminating sort of the risk element out there. But you seem to be making an argument that would preclude ever getting to a full merits decision. Well, I think, Your Honor, that it would maybe preclude it on the March 19th order, because that order no longer applies to faith-based services. But I think if the plaintiffs were to challenge the other orders or anything else affecting religious services, we could. Do they have a claim for nominal damages here? I believe so, Your Honor. Doesn't that keep the case alive? It might below, Your Honor, that's true, but I think... Sovereign immunity? We have now in our amended motions to dismiss before the lower courts. As to the nominal damages, or only as to the Kentucky Religious Freedom Act? We've asserted that as to both, Your Honor. So how could we say the entire case is moot without that issue being resolved, the nominal damage issue? We couldn't do that, could we? No, Your Honor, but I think you could give direction to the district court that the First Amendment claims are moot and require dismissal of those. If I could, Your Honors, I would just briefly like to address the underlying issues. And I know the court's aware of these, but we do believe that we have received guidance now from the Supreme Court to address these issues that the court should consider if it chooses to reach the merits of this issue. On May 29th, the Supreme Court issued, denied an application for an injunction in South Bay United Pentecostal Church. It was a very similar order that ultimately went up to the court, and Chief Justice... I'm confused, though. Both of the Supreme Court cases were not total bans of in-person, right? They were 25% and 50%? They were at the time they reached the court, Your Honor, but California's was initially a total ban. But by the time they reached the court, I didn't think they were total bans. That's true, Your Honor. If we're strictly dealing with March 19th here in our case, aren't we dealing with the total bans? Yes, Your Honor, that's true. But the issues before those courts were still the disparate treatment of what the plaintiffs here allege is the similar disparate treatment of allowing greater groups of people in non-secular activities such as offices, grocery stores, laundromats, as opposed to allowing fewer people in church. And that was precisely the issue in the Calvary Chapel, Dayton Valley case. And what I think is of particular interest there is Justice Alito, in his dissent, recognizing the deference that he believes is owed earlier in this pandemic to the state governors that were addressing these. He recognized the imperfect lines that could be drawn. But what he said is once we move and get further into this pandemic, we're going to hold them to a higher standard. And I think that might be the line that they're trying to draw by applying Jacobson and applying these stricter scrutinies that apply in other times outside of an emergency. And what's important to remember about this order, Your Honors, is that it was entered on March 19th, less than two weeks into the declared state of emergency in Kentucky. It was entered at a time when we did not have adequate testing in the state to have certainty in a positivity rate. It was entered at a time we had a lack of hospital resources, medical resources. We lacked the PPE to adequately supply hospitals or other medical professions during the surge. It was entered at the precipice of this emergency. And because of that, we believe that now there is guidance from the Supreme Court that the Jacobson standard should apply. And that the deference owed to the governors under that standard should also apply to these early measures. Mr. Payne, let me ask you what I think is a related question. You've argued repeatedly that this case is about the March 19th order, and then you're saying the case is moot because the March 19th order has been replaced with a May 9th order. I mean, one way to look at it is the case is just sort of morphed from March 19 to May 9th. And they're making other complaints that are not, I don't think they're probably before us, they're making other complaints about the May 9th order, like whether you can sing in a congregation, that sort of stuff. You seem to say the case is moot and it goes away because you replaced the March 19 order. And so are you essentially saying then they have to file a new case dealing with the May 9th order, the effect of which is every time you change an order, the old case goes away and they have to file a new case? I am in this case, Your Honor, that is what I'm arguing. Why does that not fit squarely within the exceptions of mootness for capable of repetition yet evading review? Well, Your Honor, if I could clarify one thing first, I believe that this case is moot not necessarily only because of the May 9th amendment that applies to churches. It's moot because we amended the actual March 19th order to remove its application to faith-based worship services. The May 9th order is vastly different than the March 19th order. It is a list of guidelines and requirements that were put into place after working with… But if the key here in this distinction you're making is the absolute ban on March 19, forgetting the appropriate questions that Judge Sutton asked you as to whether a new order would be exactly the same as an old order, to this day, you are not willing to avow the authority of the governor to again ban in-person services if the status of the spread of the virus dictates that in his judgment. Am I right about that? You are right about that, Your Honor. And then how is it moot? Your Honor, it's moot because, I mean, in terms of the capable of repetition yet evading review exception to the mootness doctrine, the Supreme Court has directed it should only apply in exceptional cases. And moreover, I think Governor Beshear's behavior here and actions taken since the March 19th order indicate and do not give any reasonable probability that that order will be entered again. I think it's different to… So if there's no reasonable possibility that it would be ordered again, why don't you just say that the governor is giving up on the authority to reimpose a complete in-person ban, which is the whole basis of why you're saying this case is moot? I think the reason I'm hesitant to say that, Your Honor, is the nature of the COVID emergency that we're in, the possibility of it going forward. It presents a difficult situation for judges, lawyers, and these governors that are making this decision. But what we do have… And the churches. I'm sorry, Your Honor, I was talking over you. And the churches. Yes, Your Honor. It's a situation for everyone. It does, Your Honor. Thank you. Mr. Payne, you know, if we're going to go back to the beginning and, you know, this kind of a pure approach that the other side is recommending and you're ambivalent about, I don't know why we don't include the ban as applying to outdoor services. I mean, the, quote, clarification is just no different from changing the order. And if you can… If everyone's going to take the view that it has to be crystal clear, 100% sure that the same thing can't be entered, as far as I'm concerned, if you're going that route, the outdoor ban is still in front of us. So I don't know what to say, but it seems to me that's how one has to look at it. You could say, at the time, it was unclear. That's why our original ruling dealt with it. You clarified it didn't apply. But clarifying it didn't apply is no different from changing the order and no different from the idea you can unchange it. So I guess if we're taking on the, hey, we might as well figure out what the law is today in light of these cert denials, I don't know why we don't go back to the original impression, including from Judge Walker, that it was applied to outdoor. Well, I would clarify that. I believe the Judge Walker opinion was, in that case, there were statements from the mayor that he was going to enforce the order as to outdoor drive-in services. But the governor was very clear in every public statement he made… So be it. That's not how this works. If it were based on governor's statements, we would resolve mootness by just give us a statement. And we know that that alone is not enough. So I'm just telling you the logic of, well, it wouldn't be so bad if it weren't moot because we can have a reassessment of the law in light of these cert denials includes going back to the outdoor. That's what I'm saying. You're the one that you're straddling two horses here, and that's your call. But don't be surprised when all of a sudden one of the horses is not under you at one point. I think the amendment of the March 19th order to remove faith-based organizations, though, would have also moved the outdoor ban interpretation of that order. Yes. If you're sticking with mootness, hardcore. But that's not what you're doing. You're saying, I want to dissolve. There's new decisions. We'd like to get a new impression of what our latitude as a governor is. And this is what happens when you ride two horses. Well, are there any other… Judge Mulvaney and Judge McKee, do you have other questions for Mr. Payne? Okay, Mr. Maney, are you… Would you mind if we took a two-minute break? Sure, let's take a two-minute break. Thank you. Okay, so you, Mr. Mando? Yes. May it please the court, counsel, Jeff Mando on behalf of defendant Boone County Attorney Robert Neese in the Roberts case. So is your client the one that theoretically could criminally prosecute? According to the plaintiffs, correct. Now, can you give us an assurance about that? Yes. He is not… My client is the Boone County Attorney. There's no way that this particular alleged injury that the plaintiffs suffered by virtue of the placement of the notices on the windshields of their car on Easter Sunday in Bullitt County, Kentucky, can in any way be fairly traceable to Boone County Attorney Bob Neese, who's located some 100-plus miles away from where this church is located. The governor is the one who decided to issue these orders. The Kentucky State… If they were to… Technically, wouldn't they be subject to quarantine in Boone County? And so if they broke the quarantine, wouldn't Bob have to prosecute them at that point, or would that be somebody else? Theoretically, but I'm going to start with the notices themselves, Judge. The notices themselves that were placed on the car that are in the record reflect that the plaintiffs would be contacted by the local health department. When you're reading that on your windshield as you're standing in the parking lot at Maryville Baptist Church, it implies that that notice would come from the Bullitt County Health Department, not in any way Boone County. And even if it was, if it could somehow be traced back to Bob Neese, there's absolutely no allegation in this case that he has threatened any of these plaintiffs in the Roberts case with taking any type of enforcement action, nor is there any evidence or allegation that he was about to commence proceedings, which are absolutely key. Plaintiffs in their reply brief at the very end try and hang their hat on Ex parte Young, but they ignore the language in Ex parte Young. Why don't you just say that you're not going to prosecute them and you're not going to enforce the quarantine order if you want to get Neese out? We're not. Well, that solves that. Well, Mr. Mando, you can say a few more things if you want, but that's very helpful. That's my argument. All right. Now, there's no reason to repeat it. We appreciate it. I'm going to guess there was rebuttal preserved here. Yes, Your Honor. Your Honor, we wanted to rebut on a couple of points. First, on the issue of moodiness that I realize the court has struggled with, I have two points that we wanted to make in response. Mr. Weiss, before you do that, do you agree that we should dismiss Neese? Your Honor, I am hesitant to agree on that because of the Voinovich case. As in Voinovich, I asked Mr. Mando at the outset of this case if he would agree to enter an order not to prosecute my clients, particularly Mr. Roberts, who in fact did break his quarantine order. Mr. Weiss, let me interrupt. Mr. Mando is an officer of the court. He's just told us his client's not going to enforce the quarantine order or any violation of the mass gathering order. Why don't you just say yes? Your Honor, we filed this case as a class action, not simply against Mr. Neese, but also against the other county attorneys. Mr. Neese deals specifically with Mr. Roberts. He does not deal with the other two plaintiffs, the named plaintiffs, one of whom is a resident of Bullitt County. The other one is a resident, I believe, of Fayette County. The concern that we have is that, although at bottom, I suppose they're all in active concert with the governor, and so if there is a preliminary injunction entered, perhaps that's good enough. There is some hesitancy on our part because of how this was pled because of the three plaintiffs and where they live that that may not be enough. Mr. Weiss, I'm sorry. This just occurred to me. Again, it may be a misapprehension. Just help me out. My recollection is there was a third case. Judge Van Tatenhove had had, and am I remembering, is that the case where he issued a statewide injunction against the order? I believe that he may have, Your Honor, at some point. Okay, so just help me out, and maybe if I have to, I can go to others that know the information. If that statewide injunction is still in place and the state hasn't appealed it, doesn't that affect things? Your Honor, I would want to see what that says. I think that could certainly, if it's still in force. Maybe I'll ask Mr. Payne again. I'm sorry, Mr. Payne. I realize this is unusual. Do you know the answer to the question of whether that injunction overlaps with these in terms of it being statewide and going to that order? He entered a statewide order, Your Honor, but then the plaintiffs voluntarily dismissed that when we amended. Got it. So that one was resolved consensually. I got it. Okay, thank you. All right. Good answer. Yeah, so, Your Honor, I think what we just heard is there is no statewide injunction right now, other than the injunctions pending appeal in this case to prevent the possible prosecution, even if Mr. Neese may not do it. Someone else, another county attorney may do it. The governor is not necessarily the prosecutor. But Mr. Neese is the only county attorney that's named as a defendant, isn't he? He is, Your Honor. But the way that this was pled was that he was also named in a representative capacity in a class capacity on behalf of all other county attorneys. So he was the representative that was named because he was the county attorney for the lead plaintiff. Yeah, but a defendant in class? That's the way we pled this, yes, Your Honor. Okay. You can file a class action saying that a defendant is a representative of an unnamed class? Is there a rule or a case that I missed that provides for that? Your Honor, that was the case in Voinovich. The Voinovich case that we cited in Women's Professional Court v. Voinovich, 130 F. 187, where the Montgomery County prosecutor was named as the class representative on behalf of all other county prosecutors in the state of Ohio regarding that abortion ban that was at issue in that case. So, yes, there is precedent for that. And the Voinovich case is one of those cases. Mr. Weiss, can I ask a question that I'm really directing to everybody? I'm honestly trying to think through a way of handling this that accounts for a lot of different perspectives on the case. Just tell me how you react to this. I know it's not giving you everything you want. And, Mr. Payne, I'm going to be interested in your reaction to this as well. The reality is the governor is saying, he's already said there's a 0% chance the same order is going to be reissued. I'm quite confident that's accurate. But at the same time, the governor does think the law has changed, and the governor has suggested they may want to dissolve the Judge Hale injunction. And that's their call. They get to decide how they want to do this. But that does legitimately create a little concern on your part. It makes me wonder if the best way to handle the case is for us to say in the Bertelsmann case that the preliminary injunction is inconsistent with our purely legal ruling on the state pending appeal. I mean, that was a law-driven decision. Very hard to understand how that would change. So we shortly say that's overruled, the preliminary injunction. So that just disappears. Or I guess you would say a preliminary injunction is entered consistent with our state order. So that leaves in place. And then we say that Hale won. You know, the state's the one that has to appeal. They didn't appeal. The judge had jurisdiction to enter the preliminary injunction. So that leaves us with two preliminary injunctions against the whatever, the March 19th order. And that leaves the state in a position to go dissolve them. And if the state wants to dissolve them, they can dissolve them on the ground that it's utterly moot and they're not going to do anything again. And it would then get appealed to the same panel if you're unhappy with that. Or the district court judge is allowed to say I'm changing my mind because of the intervening cert decision, cert opinions. Again, if that happened, it would be appealed back to us. What's wrong with that approach? I mean, there's no peril in the interim because the injunctions in the Hale case stays in place. In one sense, Mr. Weiss, you'd be getting the relief you want, a preliminary injunction, although without much law. It would simply be saying his denial of a preliminary injunction is incompatible with our prior ruling. We just ask him to issue the preliminary injunction and then make the point as for mootness issues, that can be resolved by both district court judges. Obviously, the governor doesn't have to move for it to be dissolved. And if he does, he's allowed to say why. And that will inform the mootness question. So what's wrong with that approach? Your Honor, we agree with that approach. And the other point that that approach would allow would be the possibility of supplemental complaint under 15B to deal with the subsequent order. So I actually think that resolution of this would be perfectly acceptable as far as we're concerned. Well, I was happy until you said it was going to lead to a new lawsuit. That was not the direction I was going. Mr. Payne, what's your reaction to that? Well, we certainly believe, as we said earlier, that the underlying issues are moot as well. But we do believe, we agree, Your Honor, that we think it would be moot as to the Maryville case. But we also believe the appeal is moot as to the Roberts case because it is important, we think, to point out, and I don't know if it's been clarified yet, that the plaintiffs in the Roberts case filed the lawsuit because of what occurred at Maryville Baptist Church. So they filed it as congregants on that day of Maryville Baptist Church, not as to another church in the Eastern District. So we think that the preliminary injunction that Judge Hale entered has given them the relief that they are ultimately seeking as well from this court. I hadn't realized that. So does everybody agree that the Judge Hale preliminary injunction covers all the people affected by the other case? Is that true, Mr. Weiss? Your Honor, I've read that preliminary injunction. I don't know that that is true. I think it may because, as one of the plaintiffs, because he's a regular congregant, I don't know that it would as to the other two. Well, that would be a very helpful thing to clarify. I mean, it seems quite sensible to get this down to one case and not two. One district court judge, not two. And, Your Honor, we did file ours prior to the church filing on behalf of the congregants for whatever that is worth. The Roberts case was the first case that was filed. And do you think your clients want to go to the judge that denied relief or the judge that granted relief? Your Honor, I think, just given the posture of it, I think our preference would be that this court enter an order reversing Judge Bertelsman's denial of a preliminary injunction with instructions to enter it as to that March 19th order. And then I think we're covered as far as we're concerned. That would be our preference. Mr. Staver, what's your take on what I just said? Judge Sutton, we agree that that would be an amenable approach that would address the fact that it's not moot based upon what- Just to be clear, that was not what I was positing. I was positing the fact that there's just a bunch of procedural problems and there's some more serious mootness or more difficult mootness questions. And really, this would be left for the district court judges to look at in the first instance. The only mootness thing we'd probably say is that the appeal was really not a case of controversy in the Hale case because the state is the one who lost and made an appeal. So that would be the only mootness ruling. Everything else would be leaving it on the table. The only thing that I would add to that is that their argument- I mean, we're happy to go back and litigate on the facts of whether these orders change. We're not just talking about March 19th. We're talking about March 25th. We're talking about the subsequent orders. Do not overrule the March 19th or March 25th. They may make some exceptions, but the court is still there. So we can litigate that and likely we'll be back up here. But the core issue is the legal issue that they continue to defend, and that is that these cases haven't been overruled by the Supreme Court. And so- We got that. We got that. And that has been very clear even through this present point. With regard to- Mr. Staber, you answered the question I was asking, so we're good. Mr. Weiss, do you have any more rebuttal? Just very briefly, Your Honor. I did just review Judge Hale's order. It does not mention- it talks about adhering to guidelines. It arguably would not encompass all of the relief that was sought for with Judge Bertelsman to include a prohibition on criminal prosecution for past violations. Other than that, I think a reversal of Judge Bertelsman with an instruction to enter the injunction would be appropriate as far as we're concerned. Well, I mean, the one thing you're doing is you're making our life a lot more difficult for what it's worth. It's a lot easier in the Hale case to resolve what I think is a pretty simple mootness issue, send it back, and just say the appeal is moot as opposed to the case being moot. And it strikes me as not a very heavy lift for Mr. Weiss and Mr. Payne to get an agreement that the governor, whatever else he's going to do, is not going to violate the Hale injunction when it comes to the parties in Denise's case. That doesn't strike me as a whole lot to ask unless I'm missing something. So why don't the two of you think about whether that's possible, because that really makes things a lot cleaner when it comes to getting it back in front of the district court, which seems to be what everyone is okay with. It's not compromising anybody in the interim. It's not getting a ruling prematurely from us. Like I said, it's pretty easy on mootness grounds to say the appeal in the Hale case is moot. And therefore, if that is properly back in front of Judge Hale and if the state chooses to dissolve, seek to dissolve the injunction, they can. And does it simply agree among yourselves that the stakes of that apply to both cases? I'm really struggling with why that's too much to ask. Mr. Payne, is that too much to ask? No, Your Honor. And I apologize. I didn't know that was... No, don't apologize. Mr. Weiss, why don't the two of you talk and let us know if I'm missing something on that point? Your Honor, the only point that I would make is this. The church issue is not the only issue in front of Judge Bertelsmann. There's also a travel ban issue that's in front of Judge Bertelsmann. They have previously sought to dissolve that. I suspect there's going to be more litigation on that travel ban issue going forward. I guess part of what I'm... But Mr. Weiss, they haven't appealed the travel ban. They have not right now, Your Honor. That's not in front of us. Right. Right. And what Judge Bertelsmann did below on dealing with the merits of this church issue was he said, look, I'm going to wait for additional guidance from the Sixth Circuit on this preliminary injunction before getting to what I'm going to call the permanent injunction issues or that phase of this case. So for that reason, also, I think we may not... It may be easier for us to get the reversal on that. And I think it could be... I don't think it's a heavy lift for this court to say, look, we've entered an injunction pending appeal. We think that that law is correct. You know, the district court's judgment is reversed on that basis. And then to allow the parties to proceed to the permanent injunction phase in the Bertelsmann case to include the travel ban and the church ban. Okay. I hear you. I'd still like you to see if there's agreement that the Hale order with respect to the March 19th order covers the plaintiffs in the Niess case. Let us know if my assumption about that is incorrect. Yes, Your Honor. All right. I think I must... Mr. Saber, do you have rebuttal as well? Yes, we have rebuttal as well, Your Honor. Okay. Just a few points. The order covers both March 19th and 25th. It's not just March 19th. That was the original stay-at-home order. March 25th is the order with the four-page exceptions with the life-sustaining. And that has been tweaked, but it is still, in essence, there, notwithstanding everything else. Judge Hale's order that he granted the PI, he also issued... That was on May 8th. He issued a footnote, footnote 3, in which he incorporated in footnote 3 the May 9 new directives that actually say, in addition to the life-sustaining requirements, places of worship have to abide by the following things. It gives a long laundry list. That's part of his order, and that's not been reversed. That's still in effect. That is contrary to this court's May 9 order, and that hasn't been changed, so it's still in existence. So he incorporated something that this court did not incorporate, in fact, limited to the life-sustaining activities on the May 9 Roberts decision. With regards to damages, we do have a nominal damages claim.  So you're saying that that's before us this morning and we need to resolve that? Well, that is, yes, because that... Have you or anybody else appealed what you just said to us? That has not been appealed, Your Honor, but the issue of this continual morphing of what you have indicated is evident. So if it hasn't been appealed, it's not before us, pretty soon. That particular P.I. is not before you in the sense that that has been separately appealed, but it's the continual morphing of the orders that you've mentioned. With regards to the nominal damages that was asked, the governor did not raise sovereign immunity for the Section 1983 nominal damages claim. It was only under RLUIPA and under state law, which is the Kentucky Religious Freedom Restoration Act. That's on page 10 of their amended motion to dismiss. So that nominal damage claim is still there, in addition to giving reason why the case is not moved. Your Honor, in terms of going back to the district court, what I fear is that we will continually be coming back up here, because every time that an order is entered and we challenge it, that order will be tweaked within two weeks to four weeks at the most, and we'll be back here again. And the question, let me just respectfully submit, is not whether there is zero chance to go back to the exact identical language or the specific restrictions of the original March 19 and March 25 order. It's whether they're going to go back to the original discrimination that ultimately results in these permutations of these various restrictions, internally as well as internally. And there's been no, in fact, while they say there's zero chance to go back to that exact written order, that's word games. They have not denied that they want to go back in some form, they want the freedom to do so, to go back into restrictions that continue to treat religious activities differently than non-religious activities. And that court is still here, and that was acknowledged by the Governor's Council even today, as well as in the briefing. So with those in mind, Your Honor, we do respectfully request that this court either grant the P.I. or acknowledge the P.I. below, and that the court did have jurisdiction to enter it, but at least at a minimum to address... Do you want us to acknowledge the P.I. or advise that it still exists? Well, at least I'd advise that it still exists, because the question is whether the court had jurisdiction since the P.I. was actually before this court, and the only issue was the I.P.A., not the P.I. Thanks to everybody. I know you all have done quite a bit of work on these cases before today. I don't think we've actually had a live argument, a Zoom argument, so thank you for all the work you've done on these tricky cases in difficult times. We're really grateful, and thanks for answering all of our questions, for which we're especially grateful. Thanks so much. The case has been submitted, and the clerk may adjourn court. This honorable court is now adjourned.